Opinion issued April 9, 2009









                    




     



In The
Court of Appeals
For The
First District of Texas




NOS. 01-08-00442-CR
          01-08-00443-CR
          01-08-00444-CR
          01-08-00445–CR
          01-08-00446-CR




ALLEN GARRETT CASTLESCHOULDT, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Cause Nos. 07CR0086; 07CR0085; 
07CR0732; 08CR0806; 08CR1268




MEMORANDUM OPINION

          Following a joint trial on three indictments, a jury found appellant, Allen
Garrett Castleschouldt, guilty of the offenses of solicitation of a minor with intent to
commit aggravated assault of a child,


 indecency with a child,


 and possession of
child pornography.


 See Tex. Penal Code Ann. §§ 15.031, 21.11, 22.021 (Vernon
Supp. 2008). The jury assessed punishment at 20 years’ confinement for the offense
of solicitation of a minor, 20 years’ confinement for the offense of indecency with a
child, and 10 years’ confinement for the offense of possession of child pornography.


 
The jury assessed a fine of $10,000 in each cause. See id. In addition, appellant pled
guilty to the offense of sexual assault of a child


 and to the offense of aggravated
sexual assault of a child.


 Pursuant to appellant’s agreement with the State, the trial
court assessed punishment at 15 years in each cause. 
 
          Appellant presents five points of error. In his first point of error, appellant
appeals the trial court’s denial of his motion to suppress evidence in all five causes. 
In his second point of error, which concerns the three tried offenses, appellant
contends that the trial court erred by denying his requested Article 38.23 instruction.



In his third point of error, appellant challenges the legal and factual sufficiency of the
evidence in each of the tried offenses. In his fourth and fifth points of error, appellant
contends that he was denied his right to effective assistance of counsel at trial.
          We affirm.
BackgroundOn a day in early November 2006, the complainant, A.A., who was then 12
years old, skipped school and spent the day with her friends, Jennifer and Krystal.
Jennifer introduced A.A. to appellant, a 53-year-old man. According to A.A.,
appellant told her that he was a photographer and he offered her money, alcohol, and
drugs if she would let him photograph her. Initially, A.A. declined. Later that night,
however, A.A. reconsidered and called appellant, agreeing to meet him the next day
at his apartment. 
          The next day, appellant and A.A. went to a nearby clothing store, where
appellant purchased for her a short denim skirt, a white “see-through” halter top, and
white “thong” underwear. A.A. testified that she had consumed alcohol and drugs on
this day, and that appellant took various photographs of her.
          A.A. testified that, initially, she told appellant she was 17 years of age, but that,
“about a week later,” she told appellant she was 13 years of age. A.A. said that she
actually turned 13 years old on November 21, 2006.
          On November 21, 2006, appellant and Jennifer met A.A. and some friends at
“Mainland Mall” in Galveston, and appellant purchased a necklace bearing A.A.’s
first name as a birthday present. 
          She returned to appellant’s apartment to take photographs on “five or six
occasions,” and that the photographs became “more graphic.” A.A. said that
appellant gave her marihuana and Xanax and that she began taking increasing
amounts because she “didn’t really want to know what [she] was doing.”
          A.A. testified that, on one occasion, she called appellant and asked him for $20. 
He agreed, and Krystal drove A.A. to appellant’s apartment. Krystal waited in the car
while A.A. ran up to the apartment. Once inside, appellant closed and locked the
door. Appellant was staring at her chest and, prior to pulling the money out of his
pocket, he said, “Let me see.” A.A. said, “No.” Appellant then “grabbed” A.A.’s
breast. A.A. told him to stop, but appellant refused. A.A. stated that he “did
eventually” stop and give her the money. 
          A.A. testified that, on another occasion, appellant offered to pay her $300 if she
would engage in sexual intercourse with him.
          On December 12, 2006, A.A. skipped school and A.A.’s family reported her
as a runaway to the Galveston Police Department (“GPD”). A.A. spent the day with
appellant at Baybrook Mall in Houston, where appellant bought her jewelry and
clothing. A.A. testified that appellant also gave her a chocolate birthday cake with
13 candles on it. A.A. returned home later that day, and GPD Officer J. Millo, who
had been assigned to follow up on the report that she had run away, talked with A.A.
about the events of the day, and referred the case to GPD Detective H. Johnson.
          According to Detective Johnson, Officer Millo informed her that A.A. had been
taken to the mall by a man named “Allen” who was “about fifty years old”; that Allen 
worked at Hastings in Galveston; and that Allen had “on several separate occasions
. . . taken pictures of her for money.” 
          On January 4, 2007, Detective Johnson interviewed A.A., went to Hastings,
and obtained information about appellant. Detective Johnson then presented a
photographic lineup to A.A., who identified appellant as “Allen.” As more fully laid
out below, A.A. told Detective Johnson about her relationship with appellant,
including that, while she had been in appellant’s apartment, she had seen a nude
photograph of her friend A.R., that she had asked A.R. about the photograph, and
A.R. had told her that she was 16 years old when appellant took the photograph. 
Detective Johnson interviewed A.A.’s friend R.H., who corroborated that the girls
had gone together to appellant’s apartment, that R.H. waited while A.A. went into
another room with appellant and that, several minutes later, A.A. came out of the
room with appellant and gave R.H. $40.00. A.A. also told Detective Johnson that she
had seen cocaine, marihuana, and guns in appellant’s apartment, and that appellant
had given her Xanax and alcohol. Detective Johnson prepared an affidavit and
obtained a warrant to search appellant’s apartment for evidence of possession of child
pornography, which permitted a “no-knock” entry. 
          On January 5, 2007, Detective Johnson, Sergeant G. Gomez of the GPD
Narcotics Division, and SWAT officers executed the warrant at appellant’s apartment.
A battering ram was used to enter the apartment. Once inside, Detective Johnson and
Sergeant Gomez asked appellant for his consent to search the apartment. Appellant
consented on videotape and on written consent forms. 
          GPD Detective S. Pena, who participated in the execution of the search
warrant, testified that he recovered a camera, photographs, a memory card, and
several rolls of film. Detective Pena developed the rolls of film and retrieved existing
and deleted photographs from the memory card. Detective Pena testified concerning
the details of numerous photographs, which were admitted into evidence at trial, of
A.A. that were found between books on appellant’s bookcase and in his desk drawers. 
The photographs depict A.A. in short dresses, lingerie, panties, and high-heel shoes,
posing on appellant’s bed and desk. A.A. is shown wearing a necklace bearing her
first name. Detective Pena described State’s Exhibit 39 as a photograph of A.A. lying
on a bed in the master bedroom, wearing satin lingerie and the necklace, and exposing
one breast. Detective Pena described State’s Exhibit 40 as a photograph of A.A. in
a red negligee and the necklace, sitting in the master bedroom, and “exposing her
genitalia with no underwear.” State’s Exhibit 41 is a photograph of A.A. exposing
her genitalia in the master bedroom. In several photographs, A.A.’s head was not
shown, but her necklace was shown. In addition, Detective Pena testified concerning
six photographs of exposed genitalia that he found between the books in appellant’s
bookcase. Detective Pena noted that the lingerie in the photographs matched pieces
of lingerie found in appellant’s apartment.
          Appellant was arrested for possession of child pornography and was released
on bond. 
          On January 6, 2007, appellant was arrested on two additional charges, that of
solicitation of a minor and indecency with a child. GPD Officer T. Maffei transported
appellant to the police station. During the ride, appellant said, “I’ll never get out of
jail for the rest of my life. . . . It was my mistake.” These statements were captured 
by the in-car camera, the tape of which was admitted into evidence. 
          At the police station, Detective Johnson conducted a videotaped interview of
appellant, which was admitted at trial. Detective Johnson asked appellant if he sold
the pictures that he took, and appellant replied in the negative. Detective Johnson
asked, “So you kept them for your own personal use.” Appellant replied, “Yes.”
          Appellant testified at trial that, on January 5, 2007, he was lying on his bed
when he heard a loud “bam,” and “there were 4 cops in the bedroom with loaded
M16s yelling and screaming.” Appellant said, “Little white-haired cop, squat [sic]
cop, got an M16 to my head. ‘Get on the ground, you fat m— f— or I’ll blow your
head off.” He was handcuffed and brought into the living room, and Officer Gomez
announced that they were there to execute a search warrant. Appellant gave his
consent to a search of the apartment, which was videotaped and presented to the jury.
          Appellant testified that he took the photographs found in his apartment and
admitted at trial. Concerning the six photographs of female genitalia found between
books in appellant’s bookcase, appellant identified three of the photographs as that
of A.A. and three as that of A.R. Initially, appellant testified that he gave the
photographs to A.A. and that he did not know how they ended up in his bookcase. 
Later, however, he testified, “I might have put them there. I’ll admit to that.” 
Appellant confirmed that, on January 5, 2007, the day the warrant was executed, he
was in possession of photographs of A.A.’s exposed genitalia and that he knew that
she was 13 years old. 
          Appellant also admitted that he had photographed A.R. Appellant said that
A.R. was in a car accident after midnight one night and that she came to his apartment
because she needed $50 to go to the doctor. Appellant testified that she was four or
five months pregnant, that she wanted to see what she looked like, and that he
photographed her in a white negligee. This occurred “when she was 16.” Appellant
also testified that A.R. “never lied about her age.”
          Appellant identified State’s Exhibit 103—a photograph of A.R. sitting on a bed
in a silk style negligee and panties, exposing her crotch—as a photograph he took of
A.R. when “she was 16 1/2 years old to be exact.” Appellant was asked if he believed
that the photograph was an inappropriate picture of a 16-year-old girl. Appellant
replied, “Not really.” Appellant testified that he also took “close ups” of her crotch
while she was wearing lace underwear.
          Appellant denied that he had touched A.A.’s breast. Appellant testified that he
might have bumped into her chest with his elbow while they were shopping at the
mall. 
          Appellant denied that he offered A.A. $300 to have sexual intercourse with
him. Appellant testified that, on November 11, 2006, A.A. told him that she was
turning 18 years old the next day; that she was a senior at Ball High School; that she
knew all of the cheerleaders; and that she could recruit them over to his house or get
him “in the door” to take photographs of them for money. He offered her $300 if she
would persuade the cheerleaders to hire him to photograph them. Appellant testified
that he found out “in the middle of December” that A.A. was not 18 years old.
          Appellant was questioned about the numerous pairs of girls’ panties (including
a pair displaying the “Hello Kitty” animated character) that were found in his
apartment individually wrapped in plastic baggies and kept inside cigar boxes. 
Appellant replied that the panties had been given to him by adult women and that the
collection constituted “25 years’ worth.”
          Appellant admitted that the marihuana found in his apartment was his, but that
he did not know the origin of the cocaine found in his kitchen. Appellant also
admitted that he gave A.A. money and alcohol.
          A.R. testified for the defense. She said that she turned 18 on August 1, 2006
and that she grew up with A.A. A.R. testified that she told A.A. that she had allowed
appellant to take nude photographs of her. A.R. stated that she never told A.A. that
she was 16 when appellant took the photograph. During cross-examination, however,
A.R. was asked if she had allowed appellant to take nude photographs of her while
she was underage. A.R. replied that she had and that she had discussed that fact with
A.A. On redirect, defense counsel asked, “I thought your testimony on direct was that
you never told [A.A.] about your age? A.R. replied, “I lied, I told you anything
because I didn’t want to be involved at all.” Again, A.R. was asked, “Did you tell
[A.A.] that you were underage when you took the pictures or not?” A.R. replied,
“Yes.”
           Sufficiency of the Evidence
          In his third point of error, appellant contends that the evidence is legally and
factually insufficient to support his convictions for possession of child pornography,
indecency with a child, and solicitation of a minor.
A.      Standard of Review
          In addressing a challenge to the legal sufficiency of the evidence, we review
the evidence in the light most favorable to the jury verdict to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Vodochodsky v. State, 158 S.W.3d 502, 509 & n.5 (Tex. Crim.
App. 2005) (citing Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979)); Hayes
v. State, 265 S.W.3d 673, 679 (Tex. App.—Houston [1st Dist.] 2008, pet. ref’d); see
also Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (explaining that
standard is not whether “[the court] believes that the evidence at the trial establishes
guilt beyond a reasonable doubt.”). 
          The jury is the sole judge of the credibility of witnesses and the weight, if any,
to afford the testimony, see Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App.
2000), which applies equally to direct and circumstantial evidence. See Powell v.
State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006). Our review encompasses the
totality of circumstances, Vodochodsky, 158 S.W.3d at 509, but we may not reweigh
the evidence and substitute our judgment for that of the jury. King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000); Hayes, 265 S.W.3d at 679. We resolve any
inconsistences in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000). When, as here, the verdict results at least in part from
the jury’s consideration of circumstantial evidence, we view the evidence “in
combination and its sum total” and “[i]t is the logical force of the circumstantial
evidence,” rather than any number of “links, that supports a jury’s verdict.” See
Evans v. State, 202 S.W.3d 158, 164, 166 (Tex. Crim. App. 2006) (explaining that
appellate court analyzed “facts or links in isolation” rather than in combination and
sum total, and thereby misapplied standard of review in addressing legal-sufficiency
challenge); Hayes, 265 S.W.3d at 679.
          In a factual sufficiency review, we view all of the evidence in a neutral light
and ask whether the jury was rationally justified in finding guilt beyond a reasonable
doubt. Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); Watson v. State,
204 S.W.3d 404, 415 (Tex. Crim. App. 2006). Evidence is factually insufficient (1)
when the evidence supporting the conviction is so weak that the verdict seems clearly
wrong and manifestly unjust, or (2) when the evidence supporting the conviction is
outweighed by the great weight and preponderance of the contrary evidence so as to
render the verdict clearly wrong and manifestly unjust. Roberts v. State, 220 S.W.3d
521, 524 (Tex. Crim. App. 2007).
          We cannot reverse when the greater weight and preponderance of the evidence
actually favors conviction. Id. We may not substitute our judgment for that of the
jury merely because we would have reached a different result. Grotti, 273 S.W.3d at
280 (citing Watson, 204 S.W.3d at 414). Instead, the record must show some
objective basis for concluding that the great weight and preponderance of the
evidence contradicts the jury’s verdict. See Watson, 204 S.W.3d at 417.
          In conducting a factual-sufficiency review, we must discuss the evidence that,
according to the appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).
B.      Analysis
          1.       Possession of Child Pornography
          Appellant challenges only the legal sufficiency of the evidence to support this
conviction for possession of child pornography in cause number 07CR0732.
Appellant contends that “[w]hile the State did establish that Appellant possessed
photographs of [A.A.]—one of which revealed her breast and others which showed
her genitalia—no evidence was offered to prove that such displays were lewd, as
required by the statute.”
          A person commits the offense of possession of child pornography if he
“knowingly or intentionally possesses visual material that visually depicts a child
younger than 18 years of age at the time the image of the child was made who is
engaging in sexual conduct and the person knows that the material depicts the child
[engaging in sexual conduct.]” Tex. Penal Code Ann. § 43.26(a) (Vernon 2003). 
“Sexual conduct” includes “lewd exhibition of the genitals, the anus, or any portion
of the female breast below the top of the areola.”



          The term “lewd” is not statutorily defined, but has a “common meaning that
jurors can be fairly presumed to know and apply.” Tovar v. State, 165 S.W.3d 785,
790 (Tex. App.—San Antonio 2005, no pet.). When a child is the subject of a
photograph, lewdness is not to be considered a characteristic of the child, but rather
as a characteristic of the photograph itself. See Alexander v. State, 906 S.W.2d 107,
110 (Tex. App.—Dallas 1995, no pet.) (applying federal interpretation of “lewd” for
purposes of applying Texas statute).


 Whether the content of a photograph
constitutes a lewd or lascivious exhibition of a child’s genitals depends on the intent
of the photographer. Id. Intent can be inferred from acts, words, or conduct. Id.
(citing Henderson v. State, 825 S.W.2d 746, 749 (Tex. App.—Houston [14th Dist.]
1992, pet. ref’d)). 
          The record shows that appellant paid A.A., a child younger than 18 years of
age, to allow him to photograph her; that he dressed her in lingerie and lace panties;
that he took photographs of her that focused on her bare breast and close-up
depictions of her genitalia; and that appellant told Detective Johnson that he kept the
photographs for his own “use.”
          We conclude that, viewing the evidence in the light most favorable to the
verdict, the jury could have rationally concluded beyond a reasonable doubt that
appellant possessed photographs of A.A. engaging in “sexual conduct,” as defined
under Penal Code section 43.25. We hold that the evidence is legally sufficient to
support appellant’s conviction for possession of child pornography. 
          2.       Indecency with a Child
          Appellant challenges the legal and factual sufficiency of the evidence
supporting his conviction for indecency with a child in cause number 07CR0085.
Appellant contends that evidence fails to show that he engaged in sexual contact. 
          Texas Penal Code section 21.11 provides, in pertinent part, that a person
commits the offense of indecency with a child “if, with a child younger than 17 years
and not the person’s spouse, . . . the person: (1) engages in sexual contact with the
child . . . .” Tex. Penal Code Ann. § 21.11(a)(1). “‘Sexual contact’ means the
following acts, if committed with the intent to arouse or gratify the sexual desire of
any person: (1) any touching by a person, including touching through clothing, of the
. . . breast . . . of the child.” Id. § 21.11(c)(1).
          The State presented evidence, through A.A.’s testimony, that A.A. called
appellant, asked him for $20, and that he agreed. Krystal drove A.A. to appellant’s
apartment and waited in the car. A.A. went into appellant’s apartment, and he closed
and locked the door. A.A. testified that appellant was staring at her chest and that,
prior to pulling the money out of his pocket, he said, “Let me see.” A.A. said, “No.” 
Appellant then “grabbed” A.A.’s breast. A.A. testified that she told him to stop, but
appellant refused. A.A. testified that he “did eventually” stop and give her the
money. The record shows that A.A. was under 17 years of age. 
          From this evidence, the jury could have rationally concluded that appellant
engaged in sexual conduct with a child.
          Appellant contends that “the State again offered only the testimony of [A.A.].” 
The uncorroborated testimony of a child complainant is sufficient to support a
conviction under Texas Penal Code Chapter 21. Tex. Code Crim. Proc. Ann. art.
38.07 (Vernon 2005). Indecency with a child is a Chapter 21 offense. See Tex.
Penal Code Ann. § 21.11 (Vernon 2003). Therefore, A.A.’s uncorroborated
testimony is sufficient to support appellant’s conviction. See Emenhiser v. State, 196
S.W.3d 915, 931 (Tex. App.—Fort Worth 2006, pet. ref’d). 
          Appellant next contends that no evidence shows that he engaged in contact
“with intent to arouse or gratify the sexual desires of any person.” The jury could
infer appellant’s intent to arouse or gratify himself from A.A.’s testimony that he
refused to remove his hand from A.A.’s breast.
          Finally, appellant contends that his testimony that he accidentally bumped into
A.A.’s chest with his elbow refutes A.A.’s claim. A jury is free in its capacity as sole
finder of fact to believe all or any part of a witnesses testimony and could have
rationally chosen to believe the testimony of A.A. over that of appellant. See State
v. Ross, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000).
          We conclude that, viewing the evidence in the light most favorable to the
verdict, the jury could have rationally concluded beyond a reasonable doubt that
appellant engaged in sexual contact with A.A. We hold that the evidence is legally
sufficient to support his conviction for indecency with a child.
          Appellant’s sole challenge under his factual sufficiency point is that the
conviction was “based entirely on” A.A.’s testimony, which was contradicted by
appellant’s testimony. Again, the uncorroborated testimony of a child complainant
is sufficient to support a conviction, see Tex. Code Crim. Proc. Ann. art. 38.07, and
the jury was free to believe A.A.’s testimony over that of appellant. See Ross, 32
S.W.3d at 855–56.
          Viewing all of the evidence in a neutral light, we conclude that a rational jury
would be justified in finding guilt beyond a reasonable doubt. See Grotti, 273 S.W.3d
at 280. We cannot conclude that the evidence supporting the conviction is so weak
that the verdict seems clearly wrong and manifestly unjust or that the evidence
supporting the conviction is outweighed by the great weight and preponderance of the
contrary evidence so as to render the verdict clearly wrong and manifestly unjust. See
Roberts, 220 S.W.3d at 524.
          We hold that the evidence is factually sufficient to support appellant’s
conviction for indecency with a child.
          3.       Solicitation of a Minor
          Appellant challenges the legal and factual sufficiency of the evidence
supporting his conviction for “solicitation of a minor with intent to commit an
aggravated sexual assault” in cause number 07CR0086. Appellant contends that
A.A.’s testimony that he offered her $300 to engage in sexual intercourse with him
is uncorroborated.
          Texas Penal Code section 15.031 provides, in pertinent part, that a person
commits the offense of solicitation of a minor 
if, with intent that an offense under Section . . . 22.021 . . . be
committed, the person by any means requests, commands, or attempts
to induce a minor or another whom the person believes to be a minor to
engage in specific conduct that, under the circumstances surrounding the
actor’s conduct as the actor believes them to be, would constitute an
offense under [22.021] or would make the minor or other believed by
the person to be a party to the commission of the offense under [22.021].

Tex. Penal Code Ann. § 15.031(b) (Vernon Supp. 2008). Under this section, a
“minor” is an individual under 17 years of age. Id. 15.031(f).
          Pursuant to Penal Code section 22.021, a person commits aggravated sexual
assault of a child if the person “intentionally or knowingly: . . . causes the sexual
organ of a child to contact or penetrate the mouth, anus, or sexual organ of another
person, including the actor” and “the victim is younger than 14 years of age.” Tex.
Penal Code Ann. § 22.021(a)(1)(B)(iii), (a)(2)(B) (Vernon Supp. 2008).  
          A person may not be convicted of the offense of solicitation of a minor 
on the uncorroborated testimony of the minor allegedly solicited unless
the solicitation is made under circumstances strongly corroborative of
both the solicitation itself and the actor’s intent that the minor act on the
solicitation. 
 
Tex. Penal Code Ann. § 15.031(c). The corroboration required is analogous to the
corroboration requirement under the accomplice-witness statute. Lankford v. State,
255 S.W.3d 275, 277 (Tex. App.—Waco 2008, pet. ref’d) (comparing Tex. Penal
Code Ann. § 15.031(c) with Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005),
and citing Richardson v. State, 700 S.W.2d 591, 594 (Tex. Crim. App. 1985)). Due
to the similarities between these two statutes, the test for evaluating the sufficiency
of the corroboration evidence is the same under each. Richardson, 700 S.W.2d at 594.
In assessing the sufficiency of the evidence corroborating the victim’s testimony, the
test requires that we eliminate the minor victim’s testimony from consideration and
then determine whether there is other incriminating evidence tending to connect the
accused with the crime. Id. It is not necessary that the corroboration evidence directly
link the accused with the crime or that it be sufficient in itself to establish guilt. Id.
 
          Here, eliminating A.A.’s testimony from consideration, we conclude that the
State presented other evidence that tends to connect appellant with the offense of
solicitation of a minor. The record shows that, at the time of the events, A.A. was
under 14 years of age and appellant was 53 years of age. It is undisputed that
appellant had not met A.A. before November 2006. However, appellant invited A.A.
to his apartment or allowed her to visit regularly, took her shopping for clothing and
jewelry, and gave her money. The record shows that numerous nude photographs
were found at appellant’s apartment, which were admitted at trial. Appellant
identified close-up photographs of exposed female genitalia as that belonging to A.A.
and A.R. Appellant admitted that he took the photographs and admitted to Detective
Johnson that he kept them for his own personal use. Appellant admitted that he gave
A.A. money and alcohol and that he gave A.R. money in exchange for allowing him
to photograph her. 
          The record shows that Detective Johnson spoke with R.H., whose statement 
corroborated that of A.A. According to Detective Johnson, R.H. told her that she
went to appellant’s apartment with A.A. and that A.A. went into another room with
appellant. A.A. came out of the room “minutes later” with appellant and gave R.H.
$40.00, and the girls left.
 
          This testimony and evidence shows that the nature of appellant’s relationship
with A.A., who was a minor, was that he gave her clothing, jewelry, money, and
alcohol and that she posed in lingerie and lace panties on his desk and bed, while he
took photographs of her, including close-up photographs of her genitalia, that he kept
for his use. This evidence tends to connect appellant with the offense of solicitation
of a minor. 
          Viewing the evidence in the light that supports the verdict, we conclude that
a rational trier of fact could have found beyond a reasonable doubt that appellant
solicited A.A., a minor, for sexual intercourse. We hold that the evidence is legally
sufficient.
          Appellant’s sole challenge under his factual sufficiency point is that the
conviction was “based entirely on” A.A.’s testimony, which was contradicted by
appellant’s testimony at trial. Again, the jury was free to believe A.A.’s testimony
over that of appellant. See Ross, 32 S.W.3d at 855–56. The jury was permitted to
draw reasonable inferences and deductions from the evidence, and we must defer to
the jury as the finder of fact. See Johnson, 23 S.W.3d at 7. As discussed above, there
was sufficient corroborating evidence to support A.A.’s testimony that appellant
solicited her. See Lankford, 255 S.W.3d at 278. We hold that the evidence is
factually sufficient to support appellant’s conviction for solicitation of a minor. 
          Accordingly, we overrule appellant’s third point of error.
Motion to Suppress 
          Appellant moved to suppress, in each cause,


 all evidence seized as well as any
statements of appellant and law enforcement officers. Appellant contends that the
evidence was seized without lawful warrant, probable cause, or other lawful
authority, in violation of the United States and Texas constitutions. See U.S. Const.
amend. VI, V, VI, XIV; Tex. Const. art. I, § 9, 10, 19. In addition, appellant
contends that any statements from him were obtained in violation of Article 38.22 of
the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 38.22
(Vernon 2005). In a pre-trial hearing, the court denied the motion to suppress. 
          In his first point of error, appellant contends that the trial court erred by
denying his motion because (1) the affidavit presented to support the search warrant
is based on “unsubstantiated and uncorroborated statements” and therefore fails to set
forth sufficient facts to establish probable cause for the existence of child
pornography possessed by appellant and (2) the information concerning the presence
of narcotics did not establish probable cause because it was stale.
 
A.      Standard of Review and Governing Principles of Law
          The review of a trial court’s ruling on a motion to suppress evidence is
bifurcated. Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); Canales
v. State, 221 S.W.3d 194, 197–98 (Tex. App.—Houston [1st Dist.] 2006, no pet.). 
We give almost total deference to a trial court’s determination of historical facts and
review de novo the court’s application of the law. Maxwell, 73 S.W.3d at 281. In
reviewing a ruling on a question of the application of law to facts, we review the
evidence in the light most favorable to the trial court’s ruling. Canales, 221 S.W.3d
at 197–98 (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).
However, we review de novo a trial court’s determination of probable cause. Id. At
a suppression hearing, the trial court is the sole and exclusive trier of fact and judge
of the witnesses’ credibility. Maxwell, 73 S.W.3d at 281. Accordingly, the trial court
may choose to believe or to disbelieve all or any part of a witness’s testimony.
Canales, 221 S.W.3d at 197–98 (citing Ross, 32 S.W.3d at 855).
          An affidavit in support of a search warrant must indicate that a specific offense
has been committed, must specifically describe the property or items that constitute
evidence of the offense or evidence that a particular person committed the offense,
and must indicate the property or items to be searched for or seized are located at the
place to be searched.



          In determining whether a probable cause affidavit sufficiently supports a search
warrant, the trial court examines the totality of the circumstances and gives great
deference to the magistrate’s decision to issue the warrant. Ramos v. State, 934
S.W.2d 358, 362–63 (Tex. Crim. App. 1996); State v. Duncan, 72 S.W.3d 803, 805
(Tex. App.—Fort Worth 2002, pet. dism’d). Probable cause exists when the
magistrate has a substantial basis for concluding that a search would uncover
evidence of wrongdoing. Illinois v. Gates, 462 U.S. 213, 236–37, 103 S. Ct. 2317,
2331 (1983). Although we examine only the four corners of the affidavit to determine
whether probable cause exists, a magistrate may draw reasonable inferences from the
affidavit and must interpret the affidavit in a common sense and realistic manner
when determining whether probable cause exists to issue the warrant. Ramos, 934
S.W.2d at 362–63; State v. Stone, 137 S.W.3d 167, 175 (Tex. App.—Houston [1st
Dist.] 2004, pet. ref’d).
 
          The allegations in the affidavit are sufficient if they would “justify a conclusion
that the object of the search is probably on the premises.” Ramos, 934 S.W.2d at 363.
Probable cause ceases to exist when it is no longer reasonable to presume that items
once located in a specified place are still there. Stone, 137 S.W.3d at 178. When the
affidavit recites facts indicating activity of a protracted and continuous nature,
however, the passage of time between the occurrence of events set out in the affidavit
and the time the search warrant was issued becomes less significant. Id.
C.      Analysis
          Here, the affidavit, dated January 5, 2007, states that on December 29, 2006,
appellant committed the specific offense of possession or promotion of child
pornography. The affidavit states that items constituting evidence could be found at
appellant’s apartment (fully described therein) as follows: 
          a.       Any and all cameras and camera memory cards, undeveloped
film, slides, and negatives.
          b.       Any and all photographic images of nude males or females of
[sic] minors.
          c.       Any illegal narcotic, illicit drugs or prescription drugs.
          d.       Any and all photographic images capturing or depicting sexual
acts, together with other fruits, instrumentalities and evidence of
crime.

          The affidavit states that the affiant, Detective Johnson, had probable cause by
reason of the following facts: On December 13, 2006, GPD Officer J. Millo advised
affiant that he had received information that A.A., a child under the age of 14, had
skipped school and was taken to the mall by a white male by the name of Allen who
worked at Hastings in Galveston, and that “on several separate occasions Allen had
taken pictures of her in exchange for money.” On January 3, 2007, affiant spoke with
the manager of Hastings, who identified appellant as an employee. On January 4,
2007, affiant talked with A.A., who identified appellant from a photo lineup. 
          A.A. advised affiant as follows:
          . . . .
          6.)    [A.A.] met [appellant] on or about the beginning of November
2006 while shopping at Hastings . . . . [and] that [appellant]
approached her in the store, gave her his phone number and
offered her money in exchange for taking pictures of her. . . . that
she phoned him that night and told him she was fifteen years old
. . . . [and] that [appellant] made arrangements for [A.A.] to come
to his apartment the following day.
          7.)      . . . [T]he following day [A.A.] went to [appellant’s] apartment
located at 2828 61st . . . Galveston, Texas. . . . [Appellant] gave
her [$100] and told her to walk to 7Mart clothing store and buy
a short skirt and a halter-top. . . . [A.A.] bought the items and
walked back to [appellant’s] apartment where he took three
pictures of her wearing the bought items posing on a desk. . . .
[Appellant] gave her $150 dollars and a bottle of alcohol. . . .
[Appellant] told her next time he would pay her more money if
she would take her clothes off. . . . [Appellant] paid for her cab
ride home.
          8.)     . . . [A]bout one week later [appellant] phoned her and requested
she come to his apartment. . . . [W]hile at the apartment
[appellant] offered her $300.00 to have sexual intercourse with
him. . . . [S]he told [appellant] she would have to think about it
and left the apartment.
          9.)     . . . [A] couple of days later she phoned [appellant] and asked him
for $20.00. . . . [W]hile at the apartment [appellant] touched her
breast over the clothes with his hands and offered her $50.00 in
exchange to see her bare breast. . . . [S]he told him no and
[appellant] gave her $20.00 and she left the apartment.
          10.)   . . . [T]hree days later she went to [appellant’s] apartment with her
friend, [R.H.], a child under the age of fourteen. . . . [W]hile at the
apartment [appellant] provided her with marijuana and took four
or five pictures of her wearing a short black dress and high heeled
shoes. . . . [R.H.] did not have any pictures taken and waited in
another room. . . . [Appellant] gave [A.A.] $100.00 and told her
to give [R.H.] $40.00.
          10.)   [sic] . . . [T]he next day she went to [appellant’s] apartment where
he paid her $40.00 in exchange for taking two pictures of her
wearing a short red dress and black high heeled shoes while
posing on his bed.
          11.)    . . . [O]n December 12, 2006 she skipped school and went to
Baybrook Mall located in Houston, Texas with [appellant] where
he bought her jewelry and clothes.
          12.)   . . . [O]n December 29, 2006 she went to [appellant’s] apartment
where he provided her with alcohol, gave her six [X]anax pills
and $100.00. . . . [A.A.] swallowed one-half of a [X]anax pill and
left the apartment. [A.A.] advised affiant that she has personal
knowledge of narcotics inside of [appellant’s] apartment. . . .
[A.A.] has seen marijuana, Zanax pills and powder cocaine inside
of [appellant’s] apartment.
          13.)   . . . [W]hile in the apartment [appellant] showed her two photo
albums containing pictures of females wearing clothes and
females not wearing clothes. . . . [A.A.] recognized [A.R.] as one
of the females in the nude photographs. [A.A.] advised affiant
that [A.R.] is eighteen years old and she has known her since she
was four years old. [A.A.] advised affiant that she asked [A.R.]
about the nude photograph and [A.R.] told her that [appellant]
had take the nude photograph of her when she was sixteen years
old.
          14.)   On January 5, 2007[,] Affiant spoke with [R.H.]. [R.H.] advised
Affiant that on or about November 15, 2006 she went to
[appellant’s] apartment with [A.A.][,] . . . that the apartment is
located [] at 2828 61st . . . Galveston, Texas. . . . [R.H.] stated she
went inside the apartment and [A.A.] went into another room with
[appellant]. [R.H.] advised affiant that several minutes later
[A.A.] came out of the room with [appellant] and gave her forty
dollars.
The affidavit continues that affiant requested to enter the premises without first
knocking and announcing the presence and purpose of the officers executing the
warrant because “photographic and drug evidence can be easily destroyed” and
because “Affiant was advised by [A.A.] that she has seen three handguns inside the
apartment of [appellant].”
           Hence, the record shows that A.A. told the affiant, Detective Johnson, that she
saw nude photographs in appellant’s apartment, that she recognized A.R. in one of
the photographs, that she had known A.R. since she was four, that she spoke with
A.R., and that A.R. told her that she was 16 years old when the photograph was taken.
Appellant first complains that the warrant is almost entirely based on A.A.’s
statements, which constituted uncorroborated hearsay and hearsay-within-hearsay. 
          A search warrant may be predicated on hearsay information furnished to the
affiant if it is shown to be credible or reliable. Thacker v. State, 889 S.W.2d 380, 387
(Tex. App.—Houston [14th Dist.] 1994, pet. ref’d). In addition, hearsay-within-hearsay may be used to establish probable cause if the underlying circumstances
indicate that there is a substantial basis for crediting the hearsay at each level. Id.
          Here, Detective Johnson verified that A.A. had been inside appellant’s
apartment and was in a position to know what was inside his residence. Detective
Johnson verified A.A.’s statements with regard to where appellant lived and worked,
and R.H. corroborated A.A.’s statements that the girls went to appellant’s apartment
and that R.H. received $40 for waiting while A.A. went into another room with
appellant for several minutes.  
          It is reasonable to conclude that when “an informant is right about some things,
[s]he is probably right about other facts.” Gates, 462 U.S. at 244, 103 S. Ct. at 2335.
“[P]robable cause requires only a probability or substantial chance of criminal
activity, not an actual showing of such activity.” Id. at 245 n.13, 103 S. Ct. at 2335
n.13. Further, although we recognize that A.A. was reported by her parents to the
police as a runaway, when “the named informant is a private citizen whose only
contact with the police is as a result of having witnessed a criminal act committed by
another, the credibility and reliability of the information is inherent.” Belton v. State,
900 S.W.2d 886, 894 (Tex. App.—El Paso 1995, pet. ref’d) (citing Tribble v. State,
792 S.W.2d 280 (Tex. App.—Houston [1st Dist.] 1990, no pet.)). 
          We conclude that a magistrate drawing reasonable inferences from the affidavit
and interpreting the affidavit in a common sense and realistic manner had a
substantial basis for finding that there was a fair probability that child pornography
would be found at appellant’s apartment. See Ramos, 934 S.W.2d at 362–63; Stone,
137 S.W.3d 167, 175; Duncan, 72 S.W.3d at 805–06; McKissick v. State, 209 S.W.3d
205, 215–16 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d); Blake v. State, 125
S.W.3d 717, 722 (Tex. App.—Houston [1st Dist.] 2003, no pet.).



          Accordingly, we overrule appellant’s first point of error.
Article 38.23
           In his second point of error, appellant contends that the trial court erred by
denying his request for an Article 38.23 instruction to the jury.
          Texas Code of Criminal Procedure Article 38.23 provides as follows:
(a) No evidence obtained by an officer or other person in violation of
any provisions of the Constitution or laws of the State of Texas, or of
the Constitution or laws of the United States of America shall be
admitted in evidence against the accused on the trial of any criminal
case. 
In any case where the legal evidence raises an issue hereunder, the jury
shall be instructed that if it believes, or has a reasonable doubt, that the
evidence was obtained in violation of the provisions of this Article, the
jury shall disregard any such evidence so obtained.
(b) It is an exception to the provisions of Subsection (a) of this Article
that the evidence was obtained by a law enforcement officer acting in
objective good faith reliance upon a warrant issued by a neutral
magistrate based on probable cause.

 
Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). 

          The Court of Criminal Appeals has explained that a defendant’s right to the
submission of an Article 38.23(a) jury instruction is limited to disputed issues of fact
that are material to the defendant’s claim that a constitutional or statutory violation
renders the evidence inadmissible. Madden v. State, 242 S.W.3d 504, 509–10 (Tex.
Crim. App. 2007). The court has explained that

[t]he terms of the statute are mandatory, and when an issue of fact is
raised, a defendant has a statutory right to have the jury charged
accordingly. The only question is whether under the facts of a particular
case an issue has been raised by the evidence so as to require a jury
instruction. Where no issue is raised by the evidence, the trial court acts
properly in refusing a request to charge the jury.

 
Id. at 510. There are three requirements that a defendant must meet before he is
entitled to the submission of a jury instruction under Article 38.23(a): 

          (1)     The evidence heard by the jury must raise an issue of fact; 
          (2)     The evidence on that fact must be affirmatively contested; and 
          (3)     That contested factual issue must be material to the lawfulness of
the challenged conduct in obtaining the evidence.  

 
Id. There must be a genuine dispute about a material fact. Id. If there is no disputed
factual issue, the legality of the conduct is determined by the trial judge alone, as a
question of law. Id. 

          Here, appellant contends that A.R.’s testimony “creates an issue of fact
regarding whether [A.A.] knew how old [A.R.] was in the pictures she observed.” 
Appellant contends that “[t]his issue is crucial, because the search warrant’s inclusion
of child pornography is based entirely on [A.A.’s] impression of [A.R.’s] age in
photographs she had seen in Appellant’s home.” Appellant argues that “[w]ithout the
uncorroborated and controverted information concerning [A.R.], the supporting
affidavit does not provide any basis to believe that Appellant possessed child
pornography.”

          A.R. testified that, although she told A.A. that appellant had taken nude
pictures of her, she did not tell A.A. specifically how old she was when the
photographs were taken. During cross-examination, however, A.R. was asked if she
had allowed appellant to take nude photographs of her when she was under age 18. 
A.R. replied that she had and that she had discussed that fact with A.A. On redirect,
defense counsel asked, “I thought your testimony on direct was that you never told
[A.A.] about your age? A.R. replied, “I lied, I told you anything because I didn’t
want to be involved at all.” Counsel then asked, “Did you tell [A.A.] that you were
underage when you took the pictures or not?” A.R. replied, “Yes.”

 
          To obtain a jury instruction under Article 38.23(a), the disputed fact must be
one that affects the determination of the legal issue. Madden, 242 S.W.3d at 517. 
Here, whether A.R. was precisely 16 years of age, under age 18, or “underage” would
not affect the determination of the legal issue regarding appellant’s possession of
photographs depicting a child younger than 18 years of age. As the Court of Criminal
Appeals explained in Madden, “it would be absurd to say that a factual dispute about
whether the defendant . . . was going 61 m.p.h. or 65 m.p.h. in a 55 m.p.h. zone
requires a jury instruction.” Id. at 518. This question would not be material to the
determination of the legal question because the jury’s resolution would not render the
evidence inadmissible. Id. 

          Accordingly, we overrule appellant’s second point of error.

Ineffective Assistance of Counsel

          In his fourth and fifth points of error, appellant contends that he was denied his
right to effective assistance of counsel. Specifically, in his fourth point, appellant
contends that his trial counsel opened the door to evidence of an extraneous offense. 
In his fifth point, appellant contends that trial counsel failed to request a change of
venue.

 
 
A.      Standard of Review 

          Appellant is entitled to reasonably effective assistance of counsel. See U.S.
Const. amend. VI; Tex. Const. art. I, § 10. The right to counsel, however, does not
mean the right to errorless counsel. Robertson v. State, 187 S.W.3d 475, 483 (Tex.
Crim. App. 2006). To prove ineffective assistance of counsel, appellant must show
that (1) counsel’s performance fell below an objective standard of reasonableness and
(2) that, but for the deficient performance of counsel, there is a reasonable probability
that the result of the proceeding would have been different. Strickland v. Washington,
466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 (1984); Andrews v. State, 159
S.W.3d 98, 101 (Tex. Crim. App. 2005). A “reasonable probability” is a probability
sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104
S. Ct. 2068.

          To prevail, appellant must prove ineffective assistance by a preponderance of
the evidence and must overcome the strong presumption that counsel’s conduct falls
within the wide range of reasonably professional assistance or might reasonably be
considered sound trial strategy. See Robertson, 187 S.W.3d at 482–83; Gamble v.
State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). A failure
to make a showing under either prong defeats a claim of ineffective assistance of
counsel. Rylander v. State, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

          As the reviewing court, we look to the totality of the representation and to the
circumstances of the case, not to isolated errors. Robertson, 187 S.W.3d at 483–84.
We must consider the adequacy of assistance as viewed at the time of trial, not
through hindsight. Id. at 482.

          Additionally, we cannot speculate as to the reasons supporting counsel’s
behavior. Bone v. State, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). Allegations of
ineffectiveness must be firmly founded in the record. Id. at 833 & n.13. Ordinarily,
the record on direct appeal is undeveloped and cannot adequately reflect the motives
behind trial counsel’s actions. Rylander, 101 S.W.3d at 110–11. Generally, a silent
record that provides no explanation for counsel’s actions will not overcome the strong
presumption of reasonable assistance. Id. In the absence of evidence of counsel’s
reasons for the challenged conduct, an appellate court should not find deficient
performance unless the conduct was so outrageous that no competent attorney would
have engaged in it. Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).
In the rare cases in which the record on direct appeal is sufficient to prove that
counsel’s performance was deficient, an appellate court should address the claim.
Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000).

          A single egregious error of omission or commission by counsel has been held
to constitute ineffective assistance, even in the absence of a record setting forth
counsel’s reasons for the challenged conduct. Vasquez v. State, 830 S.W.2d 948,
950–51 (Tex. Crim. App.1992); McKinny v. State, 76 S.W.3d 463, 470–71 (Tex.
App.—Houston [1st Dist.] 2002, no pet.).

B.      Opening the Door to Evidence of an Extraneous Offense

          In his fourth point of error, appellant contends that his trial counsel opened the
door to evidence of an extraneous offense. Specifically, appellant complains of the
following colloquy, that took place during defense counsel’s direct examination of
A.R.:

          [Counsel]:   Did you ever tell [A.A.] that [appellant] had taken nude pictures
of you?
          [A.R.]:         Yes, I have told her that.
          [Counsel]:   Did you tell her you were 16 years old at the time you took those
photos?
          [A.R.]:         I didn’t tell her no [sic] age.

Subsequently, during cross-examination of A.R., the State asked whether appellant
had ever taken nude photographs of A.R. when she was underage. Defense counsel
objected, asserting that the State was assuming he had opened the door to an
extraneous offense when all he had done was “put on testimony that attacks the
validity of the search warrant.” The trial court overruled the objection, concluding
that counsel had opened the door to evidence of the extraneous offense. Appellant
contends that, “[w]ithout [A.R.’s] testimony, the State did not have age confirmation
on many of the photographs alleged to be child pornography.”
          To the contrary, the record shows that appellant himself testified that he
photographed A.R. in a white negligee in exchange for money “when she was 16.”
Appellant identified State’s Exhibit 103—a photograph of A.R. sitting on a bed in a
silk style negligee and panties, exposing her crotch—as a photograph that he took of
A.R. when “she was 16 1/2 years old to be exact.” Appellant testified that A.R.
“never lied about her age.” 
          Hence, appellant has not met his burden to show prejudice under the second
prong of Strickland. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. When, as here,
appellant fails to meet the prejudice prong, we need not address the question of
counsel’s performance on this point. See Boyd v. State, 811 S.W.2d 105, 109 (Tex.
Crim. App. 1991). The failure to make a showing under either of the required prongs
of Strickland defeats a claim for ineffective assistance of counsel. Rylander, 101
S.W.3d at 110–11. We conclude that appellant has not met his burden to show
ineffective assistance of counsel by a preponderance of the evidence.
          Accordingly, we overrule appellant’s fourth point of error.
C.      Change of Venue
          In his fifth point of error, appellant contends that his trial counsel failed to seek
a change of venue. Specifically, appellant complains that, prior to trial, numerous
articles concerning this case were published in the Galveston County Daily News and
in the Houston Chronicle that disparaged appellant.
          Texas Code of Criminal Procedure article 31.03 provides, in relevant part, as
follows:A change of venue may be granted in any felony . . . case . . . on the
written motion of the defendant, supported by his own affidavit and the
affidavit of at least two credible persons, residents in the county where
the prosecution is instituted, for either of the following causes, the truth
and sufficiency of which the court shall determine:
          1.       That there exists in the county where the prosecution is
commenced so great a prejudice against him that he cannot obtain
a fair and impartial trial; and
          2.       That there is a dangerous combination against him instigated by
influential persons, by reason of which he cannot expect a fair
trial. 

 
Tex. Code Crim. Proc. Ann. § 31.03(a) (Vernon 2006). To justify a change of
venue based on media attention, a defendant must show that the publicity was
pervasive, prejudicial, and inflammatory. Gonzalez v. State, 222 S.W.3d 446, 449
(Tex. Crim. App. 2007). The mere existence of media attention or publicity is not
enough, by itself, to merit a change of venue. Id. Even widespread publicity, without
more, is not considered inherently prejudicial. Id. Further, even extensive knowledge
of the case or defendant in the community as a result of pretrial publicity is not
sufficient if there is not also some showing of prejudicial or inflammatory coverage. 
Id. 

          Here, appellant contends that “given the amount and nature of pre-trial
publicity,” counsel “should have sought to have the trial removed to a jurisdiction
untainted by inflammatory news coverage.” Appellant contends that counsel’s failure
“led to Appellant being tried in front of a jury which likely had been influenced and
biased by the media coverage.”

          The record reflects that counsel asked the venire whether any of them “had ever
read anything in the paper about appellant or this case.” Only veniremember number
nine indicated that he had seen any such publicity. The record reflects that number
nine did not serve on the jury. Hence, appellant has not demonstrated an actual,
identifiable prejudice on the part of members of his jury that was attributable to the
publicity. See Moore v. State, 935 S.W.2d 124, 129 (Tex. Crim. App. 1996). 

          The record is silent as to counsel’s strategy concerning venue in this case. 
However, even if we were to conclude, which we do not, that the failure to request
a change of venue was in itself ineffectiveness, there is no basis in the record for
concluding that the outcome would have been different.

          Accordingly, we overrule appellant’s fifth point of error.

 
 
Conclusion

We affirm the judgment of the trial court.

                                                                   

 

 
Laura Carter Higley

Justice

 
Panel consists of Justices Jennings, Keyes, and Higley.



Do not publish. See Tex. R. App. P. 47.2(b).